IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BETTY ABBIE, et al. | No. 2:20-CV-01995-KJM-DMC |
| Plaintiffs, | |
| v. | <u>ORDER</u> |
| SHASTA COUNTY, et al., | |
| Defendants. | |

Plaintiffs, who are proceeding with retained counsel, bring this civil action. Pending before the Court is Plaintiffs' motion to compel non-party Shasta County Coroner's Office to comply with their subpoena. ECF No. 77. The Parties remotely appeared for a hearing before the undersigned on June 21, 2023. Following argument, the matter was submitted.

The purpose of discovery is to "remove surprise from trial preparation so the parties can obtain evidence necessary to evaluate and resolve their dispute." <u>United States v. Chapman Univ.</u>, 245 F.R.D. 646, 648 (C.D. Cal. 2007) (quotation and citation omitted). Federal Rules of Civil Procedure offers guidance on the scope of discovery permitted:

> Parties may obtain discovery regarding any nonprivileged information that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery

1

1 | need not be admissible in evidence to be discoverable.

2 | Fed. R. Civ. P. 26(b)(1).

A district court enjoys "broad discretion when resolving discovery disputes, which should be exercised by determining the relevance of discovery requests, assessing oppressiveness, and weighing these factors in deciding whether discovery should be compelled." United States ex rel. Brown v. Celgene Corp., No. CV 10-3165 GHK (SS), 2015 WL 12731923, at *2 (C.D. Cal. July 24, 2015) (internal citations and quotation marks omitted). Relevancy, for purposes of discovery, "has been construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." Nguyen v. Lotus by Johnny Dung Inc., No. 8:17-cv-01317-JVS-JDE, 2019 WL 3064479, at *1 (C.D. Cal. June 5, 2019).

Because discovery must be both relevant and proportional, the right to discovery, even relevant discovery, is not limitless. See Fed. R. Civ. P. 26(b)(1); Nguyen, No. 8:17-cv-01317-JVS-JDE, 2019 WL 3064479, at *1. The court may limit discovery if it is "unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive;" or if the party who seeks discovery "has had ample opportunity to obtain the information by discovery;" or if "the proposed discovery is outside the scope permitted by Rule 26(b)(1)." Fed. R. Civ. P. 26(b)(2)(C). "The party seeking to compel discovery has the burden of establishing that its request satisfies the relevancy requirements of Rule 26(b)(1)." Bryant v. Ochoa, 2009 WL 1390794, at *1 (S.D. Cal. May 14, 2009) (citations omitted). "Thereafter, the party opposing discovery has the burden of showing that the discovery should be prohibited, and the burden of clarifying, explaining or supporting its objections." Id.

### I. SUMMARY OF DISCOVERY DISPUTE

The current dispute involves a Rule 45 subpoena issued to the Shasta County Coroner's office regarding the in-custody death of Teddy Abbie ("Decedent"). See ECF No. 77, pg. 5. Dr. Amaro, Shasta County Coroner's Office's former forensic pathologist, preserved Decedent's tissues and organs ("autopsy material") and conducted a histologic examination of

2

Decedent's skeletal muscle, lung, liver and heart as a part of Decedent's autopsy. See id., pg. 6. Dr. Amaro did not examine the histology of any other preserved autopsy material, including Decedent's brain tissue. See id.

On February 1, 2023, Plaintiffs served a Notice of Subpoena and subpoena for plaintiffs' forensic pathology expert, Dr. Bennet I. Omalu, a certified forensic pathologist, neuropathologist, autopsy pathologist, and clinical pathologist, to inspect, sample and prepare the histology slides and autopsy tissue and organs retained by the Shasta County Coroner's Office pursuant to Rule 45. See ECF No. 77-1, pgs. 6-10. Plaintiff's subpoena requested the following:

> ANY and ALL histology slides, tissue samples, tissue blocks, organs, tissue, recut sections of all autopsy tissue histology slides, related to Shasta County Coroner's Office Case No. C19-0582, Teddie Woodrow Abbie, D.O.B.: 08/18/1968.

ECF No. 77-1, pgs. 6-10.

On February 13, 2023, Defendants objected to the subpoena. See id., pgs. 13-15. Defendants raised the following objections[1]:

> First, Defendants object to the extent that Plaintiffs' subpoena does not correctly identify the Decedent, Teddy Woodrow Abbie, D.O.B. 03/05/1961. Second, Defendants object to the extent that plaintiff's subpoena is vague, overbroad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. Defendants further object to the extent the request for histology slides and tissue samples is not authorized by the Federal Rules of Civil Procedure. Specifically, Fed. R. Civ. P. Rules 34 and 45 authorize the Court to compel a thirdparty's compliance with a valid subpoena and enter an order compelling production of tangible items *already in existence*. Fed. R. Civ. P. 45(d)(2)(b)(i) ("At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection."). Defendants further object because plaintiffs' subpoena seeks discovery that is not relevant and proportional to the needs of the case pursuant to Fed. R. Civ. P. 26(b)(1). As noted above, plaintiffs' subpoena is not likely to lead to the discovery of admissible evidence, and, as such, the scope of the subpoena commanding the recut sections of histology slides and delivery of the same to plaintiffs' counsel, for independent and unilateral review, will result in an undue burden and unnecessary expense being levied on the defendants. The potential creation of the slides will no doubt involve the expenditure of valuable resources by the County, as well as the shipment thereof. However, defendants will then have to ship the materials to their

---

[1] Neither Defendants nor the subpoenaed party moved to quash the subpoena. Under Rule 45(d)(3), a party to which a subpoena is directed may move for an order quashing the subpoena; otherwise, the party must respond. See Fed. R. Civ. P. 45(e).

3

>own experts to conduct a reciprocal review of the materials, thus both the request and the method prescribed by plaintiffs is unduly burdensome and not proportional to the needs of the case.

ECF No. 77-1, pgs. 13-14 (emphasis in original).

Defendants also contended they are entitled to a protective order to prevent the subpoena from being effected in a manner that would impose "undue/unwarranted burden or expense or annoyance on defendants and the Shasta County Coroner's Office." Id., pg. 14 (emphasis omitted). Defendants asserted that:

>[They] may also seek a protective order prescribing an alternative method for the discovery other than that selected by the party seeking the discovery. Plaintiffs have requested a method of production that is one-sided and unfair to defendants, in that if the Shasta County Coroner's Office produces histology slides to be delivered to plaintiffs without a comparable defense expert present to monitor and participate in the examination thereof, defendants will not have a full and fair opportunity to view the slides in their original form. Under such circumstances, the risk of evidence spoliation is very high, and the attendant costs unnecessarily burdensome.

Id.[2]

The Parties then engaged in multiple meet and confer discussions regarding the subpoena. See id., pgs. 17-23. First, Defendants objected that the subpoena required the Coroner's Office to create and ship the histology slides to Plaintiffs and objected that such method is inappropriate because: (1) the Coroner's Office cannot be commanded to "create" discovery; (2) commanding the Coroner's Office to cut sections of autopsy material, prepare histology slides, and deliver the slides would result in undue burden and expense; (3) if the histology slides are prepared by the Coroner's Office then shipped to Plaintiffs, Defendants would not be afforded the opportunity to have a defense expert present to monitor and participate in the examination of the histology slides, and presents a risk of spoliation. See ECF No. 77, pg. 6. Plaintiffs clarified that they were seeking to have Dr. Omalu travel to the Coroner's Office to sample the autopsy material and prepare the histology slides, and offered Defendants "identical duplicate slides," at Plaintiffs' expense. See id., pg. 7. Plaintiffs also proposed Defendants' expert be present to monitor the process and/or collect their own samples. Id., pg. 8.

---

[2] To date, Defendants have not sought a protective order.

4

    Next, Defendants objected on the grounds that Dr. Omalu is a contracted forensic pathologist for the Coroner's Office and his contract with the Coroner's Office presents a potential conflict. See id., pgs. 7-8. Defendants instead proposed Dr. James Olson to sample the autopsy material and prepare the slides, as he would be neutral, unlike Dr. Omalu. See id.; see also ECF No. 77-3, pg. 3.  Plaintiffs' responded that Dr. Olson is himself a contracted forensic pathologist for the Coroner's Office so Defendants' argument was without merit.  See id., pg. 7. Defendants also maintained that allowing Dr. Omalu to sample Decedent's autopsy material was contrary to the standard operating procedure ("SOP") of Shasta County Coroner's Office; Plaintiffs requested the policies that prohibit or limit an outside forensic pathologist from sampling autopsy material, but none were provided. See id.

    Lastly, Defendants again raised the issue of spoliation, but on the grounds that there is a risk of insufficient autopsy material remaining for future sampling.  See id.  Plaintiffs requested that Defendants quantify the amount of autopsy material remaining, but Defendants did not provide the requested information. See id.

    As discussed below, the Court grants Plaintiffs' motion.

## II.  DISCUSSION

    It is well settled that the scope of discovery under a subpoena is the same as the scope of discovery under Rules 26(b) and 34. Goodyear Tire & Rubber Co. v. Kirk's Tire & Auto Serv. Ctr., 211 F.R.D. 648, 662 (D. Kan. 2003) (quoting Advisory Committee Note to the 1970 Amendment of Rule 45(d)(1) that the amendments "make it clear that the scope of discovery through a subpoena is the same as that applicable to Rule 34 and the other discovery rules."). Under Rule 45, a party can command a nonparty through a subpoena "to produce documents, electronically stored information, or tangible things" and "requires the responding person to permit inspection, copying, testing, or sampling of the materials." Fed. R. Civ. P. 45(a)(1)(D).  As such, a party may serve a subpoena requesting information within the scope of Rule 26.  See Fed. R. Civ. P. 34(a).  Rule 45 permits the use of a subpoena to obtain "virtually equal access" to information in the custody of a nonparty. See § 2206 Scope of Discovery, 8B Fed. Prac. & Proc.

Civ. § 2206 (3d ed.).  A party may also use a subpoena to "inspect, measure, survey, photograph, text, or sample the property or any designated object or operation on it." Fed. R. Civ. P. 34, 45.

The Court discusses, but overrules, each of Defendants' objections, below.

### A. Correct identification of Decedent

Defendants object that the subpoena did not correctly identify the Decedent's date of birth; however, at the hearing, Defendants' conceded the ability to correctly identify the Decedent was not at issue.  Therefore, the Court overrules this objection.

### B. Objections as to vagueness, breadth, and burden

A court evaluating whether a subpoena is unduly burdensome under Rule 45 must consider factors such as "relevance, the need of the party for the documents, the breadth of the document request, the time period covered by it, the particularity with which the documents are described and the burden imposed." See Moon v. SCP Pool Corp., 232 F.R.D. 633, 637 (C.D. Cal. 2005) (citation and quotation marks omitted). Here, there is nothing unduly burdensome about Plaintiffs' subpoena.  The request is narrowly tailored and the information sought is relevant in that Plaintiffs are seeking to examine autopsy materials related to Decedent's death in order to disprove the Coroner's findings of cause and manner of death. Plaintiffs cannot obtain this autopsy material from anyplace else.  These objections are overruled.

### C. Reasonably calculated to lead to the discovery of admissible evidence

Rule 26(b) provides that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case," but "[i]nformation within this scope of discovery need not be admissible in evidence to be discoverable." Fed. R. Civ. P. 26(b)(1). Thus, the only determination, here, is whether the information sought is (1) relevant, (2) proportional to the needs of the case, or (3) privileged.  For the reasons discussed herein, the requested information is relevant and proportional to the needs of the case.  No matters of privilege are before the Court. Hence, these objections are overruled.

///

///

///

D. **Proportionality**

Defendants contend that responding to the subpoena will result in an undue burden and will "involve the expenditure of valuable resources" by Defendants for recut sections of histology slides and delivery to Plaintiffs for independent and unilateral review, as well as the subsequent shipment and "reciprocal review" by Defendants' own expert. Allowing Plaintiffs' expert to test the sample, at Plaintiffs' expense, is not unduly burdensome or cost prohibitive for the County and the information sought is wholly proportional to the needs of the case. Plaintiffs allege that Decedent's death was caused by the excessive use of force by Defendant officers and that death resulted from restraint asphyxia while being held in prone position with body weight. Based on those contentions, Plaintiff asserts that the manner of death is homicide. Consequently, in order to support Plaintiffs' claims, they need Dr. Omalu to evaluate the histology of the preserved autopsy material, including Decedent's brain tissue.

As to Defendants' contention that the subsequent shipment and "reciprocal review" by Defendants' own expert will result in additional costs to the County, making the request unproportional, such actions by Defendants are by choice. Plaintiffs' have agreed to provide Defendants' "identical duplicate slides" at Plaintiffs' expense for Defendants' own analysis and opinion. If Defendants choose not to consult an expert to rebut Dr. Omalu's findings then that is their choice. As a result, these objections are overruled.

E. **Production of tangible things in existence**

Defendants object to the subpoena on the grounds that it is improper because it requests the creation of evidence to be used in this matter. Plaintiffs do not specifically respond to Defendants' objections. Defendants first object that no rule under the Federal Rules of Civil Procedure authorize the court to compel the creation of evidence. See ECF No. 77, pg. 16. Defendants' object that Federal Rules of Civil Procedure 45 does not authorize such a request for testing, because these rules only "authorize the Court to compel a thirdparty's compliance with a valid subpoena and enter an order compelling production of tangible items *already in existence*." ECF No. 77, pgs. 18-19. (emphasis in original). Defendants contend Rule 45(d)(2)(b)(i) supports their position because "[a]t any time, on notice to the commanded person, the serving party may

7

move the court for the district where compliance is required for an order compelling production or inspection." Id. Defendants also assert that Rule 34 only requires a party to produce documents that are already in existence. See ECF No. 77, pgs. 18-19 (citing Rockwell Int'l Corp. v. H. Wolfe Iron & Metal Co., 576 F. Supp. 511 (W.D. Pa. 1983)). Defendants do not object to Plaintiffs' expert's request to examine the histology slides. ECF No. 77, pg. 16.

Contrary to these objections, Defendants then assert that they do not object to the creation of histology slides, but "certainly object to having one party's retained expert create evidence that is to be used and evaluated by all parties." ECF No. 77, pg. 19. In this regard, Defendants seek to "remove retained experts from the process of recuts and slide creation in their entirety in order to preserve the handling of physical evidence currently in the custody of the Shasta County Coroner's Office." ECF No. 77, pg. 17. Defendants contend such testing of evidence "should be done by a neutral forensic pathologist and pursuant to the standard practice of the Coroner's office, not one that Plaintiff's request be overridden to have their expert unilaterally create evidence." ECF No. 77, pg. 19. Defendants argue that neutrality of the evidence preparation will provide a safeguard to ensure the parties will all receive identical slides. See ECF No. 77, pg. 19. Instead, Defendants propose a Dr. Olson conduct the recuts and then, pursuant to the SOP, the Coroner's Office have identical histology slides created and sent to the parties' experts. See id., pg. 17. Dr. Olson, they suggest, is neutral because he is employed in Oregon, maintains a contract with the Coroner's Office to allow him to conduct recuts, but not to prepare the histology slides, as proposed by Plaintiffs and their expert. See ECF No. 77, pg. 17.

Plaintiffs argue that they seek to Dr. Omalu travel to the Coroner's Office to sample the autopsy material and prepare the histology slides and have offered Defendants "identical duplicate slides" at Plaintiffs' expenses. See id., pg. 7. As to the SOP, Plaintiffs maintain that they have requested, but not received, a copy of the SOP.

/ / /
/ / /
/ / /
/ / /

8

Rule 45 provides that "[a] command in a subpoena to produce documents, electronically stored information, or tangible things requires the responding person to permit inspection, copying, testing, or sampling of the materials.[3] Fed. R. Civ. P. 45(a)(1)(D). Additionally, the subpoena here states that "[y]ou are commanded to . . . permit inspection, copying, testing, or sampling of the material . . . ." ECF No. 77-1, pgs. 6-10.  Defendants contend Rule 45 applies only to production of items already in existence, but the autopsy material that Plaintiffs request are, in fact, already in existence.  Dr. Amaro, the Coroner's Office's former forensic pathologist, preserved Decedent's tissues and organs.  Plaintiffs seek to have Dr. Omalu "precisely cut a thin section of the tissue"—Decedent's tissue that already exists.  In any event, in briefing and during the hearing, Defendants conceded that Dr. Omalu could, in fact, do the tissue cutting, and that their primary argument was based on the Parties following the County's SOP—that any slides are to be prepared by Shasta Pathology to maintain and preserve the chain of custody of the evidence.  Thus, because Defendants are agreeable to Dr. Omalu making the cuts of the tissue samples, and the tissue to be sampled is autopsy material of Decedent, which has been preserved and which currently exists, the Court overrules this objection.

### F. **Spoliation of the autopsy material**

It is unclear whether Defendants included the issue of spoliation of the autopsy material in their objections.  Nonetheless, Defendants object to the creation of the histology slides by Dr. Omalu, because the procedure is purportedly not "in conformity with the County's standard protocol to maintain the integrity of the physical evidence" and would destroy the proper "chain of command." ECF No. 77, pgs. 16, 19. Defendants contend that, pursuant to the County's SOP, "tissue is cut from existing samples and loaded into tissue cassettes," which are then sent to third party Shasta Pathologists, who then "create a block of tissue and cut it placing the tissue into slides," which are then returned to the Coroner's Office." ECF No. 77, pgs. 16-17.  The purpose of these procedures is to "maintain the integrity of their investigations and the handling of

---

[3] If a subpoena issued under Rule 45 didn't allow for sampling then such words would be surplusage, without any effect.  Such constructions are to be avoided, when possible. See In re Eastport Associates, 935 F.2d 1071, 1080 (9th Cir. 1991).

physical evidence." ECF No. 77, pg. 17.  According to Defendants, while a pathologist may be permitted to cut the tissue, the slides are to be prepared by Shasta Pathology to maintain and preserve the chain of custody of the evidence.  ECF No. 77-4, pg. 2.

However, at the hearing on the instant motion, Defendants represented that Plaintiffs' proposed sampling by Dr. Omalu did not exhaust Decedent's autopsy material. Defendant's ongoing concern was instead that Dr. Omalu did not intend to use the County's contracted third party, Shasta Pathologists, to create the slides because it is against the County's SOP and breaks the chain of custody.  Defendants alternatively offered to have Dr. Omalu perform the tissue cut, but then send the sample to Shasta Pathologists –in order to ensure neutrality and avoid different laboratories creating different slides.  Plaintiffs responded that Dr. Omalu's laboratory is also a third party company, which has not had any issues with chain of custody previously.

As to Defendants' argument regarding the broken chain of custody, such argument is unavailing. The chain of custody is not broken if the parties follow the appropriate practices to ensure proper custodian retention.  See Gallego v. United States, 276 F.2d 914, 917 (9th Cir. 1960); Catlin v. Davis, No. 107CV01466LJOSAB, 2019 WL 6885017, at *90 (E.D. Cal. Dec. 17, 2019) (finding no abuse of discretion in overruling objection based on chain of custody claim because it is "[t]he burden on the party offering the evidence is to show to the satisfaction of the trial court that, taking all the circumstances into account including the ease or difficulty with which the particular evidence could have been altered, it is reasonably certain that there was no alteration") (citation and internal quotation marks omitted). Moreover, such argument goes to the issue of weight, not admissibility, of the evidence.  See United States v. Harrington, 923 F.2d 1371, 1374 (9th Cir. 1991) ("The possibility of a break in the chain of custody goes only to the weight of the evidence."); United States v. Godoy, 528 F.2d 281, 284 (9th Cir. 1975) (finding potential break in custody issue to be considered by the jury in assessing the weight of the evidence not precluding admissibility).  As such, such argument is better raised in a motion for summary judgment or at trial.  The issue here is whether the material requested is relevant, proportional to the needs of the case, and non-privileged.  See Rule 26(b).  Defendants have not

sufficiently argued otherwise. As a result, this objection is overruled.

### G. Prejudicial to Defendants/Dr. Omalu's bias

Defendants object to the manner and method of recuts and creation of the histology slides, because it would be prejudicial to Defendants. See ECF No. 77, pg. 16. Defendants contend that Dr. Omalu is biased in that he has already determined, without evaluating the tissue samples, that Dr. Amaro was wrong. See id., pg. 17.  Plaintiffs rebut this contention asserting that Dr. Omalu must conduct an independent review of Decedent's autopsy material in order to make a "personal decision regarding the precise area that he wants to cut for further examination," which might reveal a reduction of oxygen to the brain, consistent with asphyxia and contrary to the Coroner's Office determination. Id.  Defendants did not originally object to the subpoena on this basis. See ECF No. 77-1, pgs. 13-14.

At the hearing, Defendants argued that, while bias is a concern, the primary argument is one of compliance with the SOP:  if Dr. Omalu and the County send their respective tissue samples to different laboratories, then the Parties will be reviewing different slides by different labs; instead, Defendants contend, it's better to maintain neutrality. Also, according to Defendants, it is standard protocol that slides must go back to the Coroner's office; however, if the slides are destroyed, then there is no such requirement.  Plaintiff argued this was a newly raised issue, but that Plaintiffs had not seen the SOP nor had been provided the date of the SOP.

As with their chain of custody argument, the Court finds Defendants' bias argument better raised pursuant to Federal Rule of Evidence 702 and Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579 (1993), and not in response to a motion to compel compliance with a subpoena.  While Defendants argue that Dr. Omalu's methods will be unreliable due to his bias, at bottom, Defendants are arguing that Defendant's preferred specialist Dr. Olson's methodology will be better than Dr. Omalu's. However, these contentions go to weight, and not admissibility, of Dr. Omalu's methodology and findings. Wendt v. Host Int'l, Inc., 125 F.3d 806, 814 (9th Cir. 1997) (finding challenges to expert's methodology goes to the weight of evidence, not its admissibility); In re Toys "R" Us-Del., Inc.-Fair & Accurate Credit Trans. Act (FACTA) Litig., No. CV 06-08163 MMM FMOX, 2010 WL 5071073, at *11 (C.D. Cal. Aug. 17, 2010) (finding

11

expert witness's bias should be brought out on cross-examination). Furthermore, there is no requirement under Rule 702 that an expert witness be unbiased. Any arguments of bias are not appropriate at this time or by the non-party. This objection is overruled.

### H. Balancing of Rule 26 Factors

In deciding whether to compel compliance with a subpoena, courts are encouraged to "exercise greater scrutiny in deciding whether discovery should be limited or precluded under the factors set forth in subsection (b)(2)(C)." Voggenthaler v. Maryland Square, LLC, No. 2:08-CV-01618-RCJ, 2011 WL 112115, at *8 (D. Nev. Jan. 13, 2011), on reconsideration in part, No. 1:08-CV-L618-RCJ-GWF, 2011 WL 902338 (D. Nev. Feb. 28, 2011). These factors include a balancing determination as to whether the burden and expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the discovery in resolving the issues. See Fed. R. Civ. P. 26(b)(2)(C).

Here, in considering the factors under Rule 26 and the balancing of the Parties' positions, the burden on Defendants is outweighed by the need and benefit to the Plaintiffs. First, as to the needs of the case, Plaintiffs are seeking to examine autopsy materials related to Decedent's death in order to disprove the Coroner's findings of cause and manner of death. Plaintiffs cannot obtain this autopsy material from anyplace else. Thus, Plaintiffs need for this material is greater than Defendants' arguments of costs and purported spoliation. Defendants contention that such request is burdensome due to increased costs to Defendants is not persuasive. Defendants argue that they will be burdened by the increase in expense in retaining an expert in order to review and rebut Dr. Omalu's conclusions. Whether or not Defendants retain an expert is, of course, their choice and is not a persuasive argument against allowing Plaintiffs' expert to test, sample, and evaluate the Decedent's autopsy materials in order to support their contentions that Decedent's cause and manner of death was not in accord with the Coroner's determination. As to the expense of the actual creation of the additional histological slides, Plaintiffs have not only agreed to pay for any costs relating to Dr. Omalu's cuts and analysis, but also to pay for duplicative slides for Defendants' use. Therefore, this factor weighs in favor of production.

Second, Plaintiffs allege wrongful death at the hands of state actors, and seek past and future compensatory damages, including survival damages and wrongful death damages. See ECF No. 70, pg. 45. Plaintiffs also seek past and future noneconomic damages, statutory damages, and interest. See id. Therefore, the amount in controversy is likely not nominal and weighs in favor of production. The third factor, the parties resources, is neutral. Plaintiffs have the resources to retain an expert to perform tests and opine as to Decedent's cause of death. Likewise, the government has the resources to hire an expert to rebut Dr. Omalu's conclusions. Thus, it's a wash as to the third factor, favoring neither production nor preclusion.

As to the fourth factor, the importance of the issues at stake in the litigation, there is no doubt that the issues in dispute are important to both Plaintiffs and the public, in general. Whether or not a death was caused by the actions of those responsible for the Decedent's well-being while in their charge is of great importance. Moreover, determining the actual cause and manner of death is important to the family. Thus, the fourth factor weighs in favor of production. Finally, as to the last factor, the importance of the discovery in resolving the issues, this too weighs in favor of production. Plaintiffs allege that Decedent's death was caused by the excessive use of force by Defendant officers and that death resulted from restraint asphyxia while being held in prone position with body weight and the manner of death to be homicide. Consequently, in order to support Plaintiffs' claims, they need Dr. Omalu to evaluate the histology of the preserved autopsy material, including Decedent's brain tissue. The discovery of this material will inform whether Plaintiffs' contention is accurate or misplaced. Thus, the discovery is important in resolving the issues in dispute and weighs in favor of production.

On balance, and under the considerations of Rule 26, allowing Dr. Omalu to sample Decedent's autopsy materials outweighs any purported burden argued by Defendants.

### III. CONCLUSION

For the above reasons, IT IS HEREBY ORDERED that Plaintiffs' motion to compel, ECF 77, is **granted** as follows:

    1.    Non-party Shasta County Coroner's Office is to permit the sampling of

Decedent's autopsy material by Plaintiffs' forensic pathology expert, Dr. Bennet I. Omalu. The selection of Decedent's autopsy material to be sampled shall be at Dr. Omalu's discretion.

2. Defendants may be present, but shall not interfere, during Dr. Omalu's sampling.

3. Plaintiff's shall provide Defendants with a "like sample" of any material cut by Dr. Omalu by slicing an adjoining sample of Decedent's autopsy material of like size and configuration and providing that to defendant's concurrently with obtaining Plaintiff's samples.

4. The Parties are free to send the samples to the laboratory of their choosing; if the Parties wish to stipulate to using the same laboratory, the Parties may do so.

5. The Court's order is based, and contingent, upon the Parties' representation that any proposed sampling will not exhaust all Decedent's autopsy material available.

Dated: June 29, 2023

_____
DENNIS M. COTA
UNITED STATES MAGISTRATE JUDGE